TH:JRS/NJM
F. #2019R00984

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN THE MATTER OF THE SEARCH OF INFORMATION ASSOCIATED WITH FACEBOOK ID NUMBER 1771457127 THAT IS STORED AT PREMISES CONTROLLED BY FACEBOOK INC. | Case No. 21-MJ-265 |

**AFFIDAVIT IN SUPPORT OF
AN APPLICATION FOR A SEARCH WARRANT**

I, Herbert Martin, being first duly sworn, hereby depose and state as follows:

## INTRODUCTION AND AGENT BACKGROUND

1. I make this affidavit in support of an application for a search warrant for information associated with a certain Facebook user ID that is stored at premises owned, maintained, controlled, or operated by Facebook Inc. ("Facebook"), a social networking company headquartered in Menlo Park, California. The information to be searched is described in the following paragraphs and in Attachment A. This affidavit is made in support of an application for a search warrant under 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A) to require Facebook to disclose to the government records and other information in its possession, pertaining to the subscriber or customer associated with the user ID.

2. I am a Task Force Officer with the United States Attorneys Office for the Eastern District of New York (the "USAO") and have been since 2020. As such, I am a "federal law enforcement officer" within the meaning of Federal Rule of Criminal Procedure

41(a)(2)(C), that is, a government agent engaged in enforcing the criminal laws and duly authorized by the Attorney General to request a search warrant. I have also been a detective with the New York City Police Department ("NYPD") since 2006. During my tenure working with the USAO and the NYPD, I have participated in numerous investigations of firearms possession and have used a variety of investigative techniques, including, but not limited to, interviews of witnesses, cooperating witnesses and confidential informants; physical surveillance; reviews of telephone records; and reviews of social media records.

3. The facts in this affidavit come from my personal observations, my training and experience, and information obtained from other agents and witnesses. This affidavit is intended to show merely that there is sufficient probable cause for the requested warrant and does not set forth all of my knowledge about this matter.

4. Based on my training and experience and the facts as set forth in this affidavit, there is probable cause to believe that violations of 18 U.S.C. § 922(g)(1) (felon in possession of a firearm) have been committed by TYQUAN JACKSON. There is also probable cause to search the information described in Attachment A for evidence of these crimes, as described in Attachment B.

**PROBABLE CAUSE**

I. <u>JACKSON'S FIREARM POSSESSION</u>

5. On August 6, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging TYQUAN JACKSON with being a felon in possession of a firearm on or about July 6, 2019. <u>See</u> 19-CR-356 (ARR), Dkt. No. 11. A summary of the facts

2

underlying this charge are set forth in the complaint filed in that matter, which I incorporate herein by reference. See id., ECF Dkt. No. 1.

II. THE SUBJECT ACCOUNT

6. For the following reasons, I submit that there is probable cause to believe that JACKSON used a Facebook account with username "young.tony.378" and Facebook ID number 1771457127 (the "Subject Account"):

7. On May 10, 2015, JACKSON was arrested for criminal possession of a weapon in the Second Degree and was subsequently indicted with that and other crimes in Kings County Supreme Court. In 2016, the Kings County District Attorney's Office ("KCDA") obtained a search warrant for records relating to the Subject Account in connection with JACKSON's arrest. I have reviewed records of profile pictures for the Subject Account obtained pursuant to that warrant. I recognize those photographs to primarily be photographs of JACKSON.

    a. On June 15, 2016, several hours prior to a scheduled motion hearing relating to the firearms charge, a KCDA Assistant District Attorney disclosed to JACKSON that KCDA had obtained a search warrant for the Subject Account and had recovered photographs of firearms contained on the Subject Account. That same day, JACKSON withdrew his motion and pleaded guilty to criminal possession of a weapon in the second degree.

    b. I have reviewed screenshots of the Subject Account taken on or about November 17, 2020. One of those screenshots shows that on May 6, 2013, the user of the Subject Account posted a picture of JACKSON as the account's cover photo. Another

screenshot shows that on September 6, 2020, the user of the Subject Account posted a series of photographs of JACKSON posing with money.

### III. EVIDENCE OF FIREARM POSSESSION ON THE SUBJECT ACCOUNT

8. As noted above, when KCDA executed a search warrant on the Subject Account in 2016, the KCDA recovered several photographs of firearms and communications regarding firearms. Such photographs and communications are also relevant to JACKSON's more recent firearm possession, as they demonstrate JACKSON's access to firearms.

9. In addition, on November 16, 2020, in connection with the prosecution of JACKSON for his 2019 firearms possession, the government disclosed to JACKSON that it was aware of KCDA's prior search warrant and had obtained an unsealing order to obtain the return from that warrant from KCDA. According to records from Facebook, three days later, on or about November 19, 2020, the Subject Account was deleted.

10. Because the Subject Account had been active since 2009, I submit that the timing of its deletion suggests that JACKSON intentionally deleted the Subject Account (or had someone else delete the Subject Account on his behalf, since he was incarcerated at the time) to prevent the government from finding additional evidence of his firearm possession on the account. I submit that this deletion therefore demonstrates consciousness on JACKSON's part that the Subject Account contains evidence that the government would have been able to use to prove his 2019 firearms possession.

11. The government submitted a preservation request for the Subject Account on or about November 17, 2020, and renewed that request on January 15, 2021. Based on my

training and experience, I understand that the contents of the Subject Account can still be obtained through a search warrant despite JACKSON's attempt to delete the account.

IV. <u>TECHNICAL INFORMATION</u>

12. Facebook owns and operates a free-access social networking website of the same name that can be accessed at http://www.facebook.com. Facebook allows its users to establish accounts with Facebook, and users can then use their accounts to share written news, photographs, videos, and other information with other Facebook users, and sometimes with the general public.

13. Facebook asks users to provide basic contact and personal identifying information to Facebook, either during the registration process or thereafter. This information may include the user's full name, birth date, gender, contact e-mail addresses, Facebook passwords, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers. Facebook also assigns a user identification number to each account.

14. Facebook users may join one or more groups or networks to connect and interact with other users who are members of the same group or network. Facebook assigns a group identification number to each group. A Facebook user can also connect directly with individual Facebook users by sending each user a "Friend Request." If the recipient of a "Friend Request" accepts the request, then the two users will become "Friends" for purposes of Facebook and can exchange communications or view information about each other. Each Facebook user's account includes a list of that user's "Friends" and a "News Feed," which

highlights information about the user's "Friends," such as profile changes, upcoming events, and birthdays.

15. Facebook users can select different levels of privacy for the communications and information associated with their Facebook accounts. By adjusting these privacy settings, a Facebook user can make information available only to himself or herself, to particular Facebook users, or to anyone with access to the Internet, including people who are not Facebook users. A Facebook user can also create "lists" of Facebook friends to facilitate the application of these privacy settings. Facebook accounts also include other account settings that users can adjust to control, for example, the types of notifications they receive from Facebook.

16. Facebook users can create profiles that include photographs, lists of personal interests, and other information. Facebook users can also post "status" updates about their whereabouts and actions, as well as links to videos, photographs, articles, and other items available elsewhere on the Internet. Facebook users can also post information about upcoming "events," such as social occasions, by listing the event's time, location, host, and guest list. In addition, Facebook users can "check in" to particular locations or add their geographic locations to their Facebook posts, thereby revealing their geographic locations at particular dates and times. A particular user's profile page also includes a "Wall," which is a space where the user and his or her "Friends" can post messages, attachments, and links that will typically be visible to anyone who can view the user's profile.

17. Facebook allows users to upload photos and videos, which may include any metadata such as location that the user transmitted when s/he uploaded the photo or video. It

also provides users the ability to "tag" (i.e., label) other Facebook users in a photo or video. When a user is tagged in a photo or video, he or she receives a notification of the tag and a link to see the photo or video. For Facebook's purposes, the photos and videos associated with a user's account will include all photos and videos uploaded by that user that have not been deleted, as well as all photos and videos uploaded by any user that have that user tagged in them.

18. Facebook users can exchange private messages on Facebook with other users. Those messages are stored by Facebook unless deleted by the user. Facebook users can also post comments on the Facebook profiles of other users or on their own profiles; such comments are typically associated with a specific posting or item on the profile. In addition, Facebook has a chat feature that allows users to send and receive instant messages through Facebook Messenger. These chat communications are stored in the chat history for the account. Facebook also has Video and Voice Calling features, and although Facebook does not record the calls themselves, it does keep records of the date of each call.

19. If a Facebook user does not want to interact with another user on Facebook, the first user can "block" the second user from seeing his or her account.

20. Facebook has a "like" feature that allows users to give positive feedback or connect to particular pages. Facebook users can "like" Facebook posts or updates, as well as webpages or content on third-party (*i.e.*, non-Facebook) websites. Facebook users can also become "fans" of particular Facebook pages.

21. Facebook has a search function that enables its users to search Facebook for keywords, usernames, or pages, among other things.

22. Each Facebook account has an activity log, which is a list of the user's posts and other Facebook activities from the inception of the account to the present. The activity log includes stories and photos that the user has been tagged in, as well as connections made through the account, such as "liking" a Facebook page or adding someone as a friend. The activity log is visible to the user but cannot be viewed by people who visit the user's Facebook page.

23. Facebook also has a Marketplace feature, which allows users to post free classified ads. Users can post items for sale, housing, jobs, and other items on the Marketplace.

24. In addition to the applications described above, Facebook also provides its users with access to thousands of other applications ("apps") on the Facebook platform. When a Facebook user accesses or uses one of these applications, an update about that the user's access or use of that application may appear on the user's profile page.

25. Facebook also retains Internet Protocol ("IP") logs for a given user ID or IP address. These logs may contain information about the actions taken by the user ID or IP address on Facebook, including information about the type of action, the date and time of the action, and the user ID and IP address associated with the action. For example, if a user views a Facebook profile, that user's IP log would reflect the fact that the user viewed the profile, and would show when and from what IP address the user did so.

26. Social networking providers like Facebook typically retain additional information about their users' accounts, such as information about the length of service (including start date), the types of service utilized, and the means and source of any

payments associated with the service (including any credit card or bank account number). In some cases, Facebook users may communicate directly with Facebook about issues relating to their accounts, such as technical problems, billing inquiries, or complaints from other users. Social networking providers like Facebook typically retain records about such communications, including records of contacts between the user and the provider's support services, as well as records of any actions taken by the provider or user as a result of the communications.

27. As explained herein, information stored in connection with a Facebook account may provide crucial evidence of the "who, what, why, when, where, and how" of the criminal conduct under investigation, thus enabling the United States to establish and prove each element or alternatively, to exclude the innocent from further suspicion. In my training and experience, a Facebook user's IP log, stored electronic communications, and other data retained by Facebook, can indicate who has used or controlled the Facebook account. This "user attribution" evidence is analogous to the search for "indicia of occupancy" while executing a search warrant at a residence. For example, profile contact information, private messaging logs, status updates, and tagged photos (and the data associated with the foregoing, such as date and time) may be evidence of who used or controlled the Facebook account at a relevant time. Further, Facebook account activity can show how and when the account was accessed or used. For example, as described herein, Facebook logs the Internet Protocol (IP) addresses from which users access their accounts along with the time and date. By determining the physical location associated with the logged IP addresses, investigators can understand the chronological and geographic context of the account access and use

relating to the crime under investigation. Such information allows investigators to understand the geographic and chronological context of Facebook access, use, and events relating to the crime under investigation. Additionally, Facebook builds geo-location into some of its services. Geo-location allows, for example, users to "tag" their location in posts and Facebook "friends" to locate each other. This geographic and timeline information may tend to either inculpate or exculpate the Facebook account owner. Last, Facebook account activity may provide relevant insight into the Facebook account owner's state of mind as it relates to the offense under investigation. For example, information on the Facebook account may indicate the owner's motive and intent to commit a crime (e.g., information indicating a plan to commit a crime), or consciousness of guilt (e.g., deleting account information in an effort to conceal evidence from law enforcement).

28. Therefore, the computers of Facebook are likely to contain all the material described above, including stored electronic communications and information concerning subscribers and their use of Facebook, such as account access information, transaction information, and other account information.

**INFORMATION TO BE SEARCHED AND THINGS TO BE SEIZED**

29. I anticipate executing this warrant under the Electronic Communications Privacy Act, in particular 18 U.S.C. §§ 2703(a), 2703(b)(1)(A) and 2703(c)(1)(A), by using the warrant to require Facebook to disclose to the government copies of the records and other information (including the content of communications) particularly described in Section I of Attachment B. Upon receipt of the information described in Section I of Attachment B,

government-authorized persons will review that information to locate the items described in Section II of Attachment B.

## CONCLUSION

30. Based on the foregoing, I request that the Court issue the proposed search warrant.

31. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant. The government will execute this warrant by serving it on Facebook. Because the warrant will be served on Facebook, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

32. This Court has jurisdiction to issue the requested warrant because it is "a court of competent jurisdiction" as defined by 18 U.S.C. § 2711. 18 U.S.C. §§ 2703(a), (b)(1)(A) & (c)(1)(A). Specifically, the Court is "a district court of the United States . . . that – has jurisdiction over the offense being investigated." 18 U.S.C. § 2711(3)(A)(i).

33. Pursuant to 18 U.S.C. § 2703(g), the presence of a law enforcement officer is not required for the service or execution of this warrant.

Respectfully submitted,

Herbert Martin
Task Force Officer
United States Attorney's Office
Eastern District of New York

Sworn to before me by telephone on March  2 , 2021

HONORABLE PEGGY KUO
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

## ATTACHMENT A

**Property to Be Searched**

This warrant applies to information associated with the Facebook ID number 1771457127 that is stored at premises owned, maintained, controlled, or operated by Facebook Inc., a company headquartered in Menlo Park, California.

# ATTACHMENT B

## Particular Things to be Seized

**I. Information to be disclosed by Facebook**

To the extent that the information described in Attachment A is within the possession, custody, or control of Facebook Inc. ("Facebook"), regardless of whether such information is located within or outside of the United States, including any messages, records, files, logs, or information that have been deleted but are still available to Facebook, or have been preserved pursuant to a request made under 18 U.S.C. § 2703(f), Facebook is required to disclose the following information to the government for each user ID listed in Attachment A:

(a) All contact and personal identifying information, including full name, user identification number, birth date, gender, contact e-mail addresses, physical address (including city, state, and zip code), telephone numbers, screen names, websites, and other personal identifiers.

(b) All activity logs for the account and all other documents showing the user's posts and other Facebook activities;

(c) All photos and videos uploaded by that user ID and all photos and videos uploaded by any user that have that user tagged in them, including Exchangeable Image File ("EXIF") data and any other metadata associated with those photos and videos;

(d) All profile information; News Feed information; status updates; videos, photographs, articles, and other items; Notes; Wall postings; friend lists, including the friends' Facebook user identification numbers; groups and networks of which the user is a member, including the groups' Facebook

group identification numbers; future and past event postings; rejected "Friend" requests; comments; gifts; pokes; tags; and information about the user's access and use of Facebook applications;

(e) All records or other information regarding the devices and internet browsers associated with, or used in connection with, that user ID, including the hardware model, operating system version, unique device identifiers, mobile network information, and user agent string;

(f) All other records and contents of communications and messages made or received by the user, including all Messenger activity, private messages, chat history, video and voice calling history, and pending "Friend" requests;

(g) All IP logs, including all records of the IP addresses that logged into the account;

(h) All past and present lists of friends created by the account;

(i) All records of Facebook searches performed by the account;

(j) The length of service (including start date) and the means and source of any payments associated with the service (including any credit card or bank account number);

(k) All records pertaining to communications between Facebook and any person regarding the user or the user's Facebook account, including contacts with support services and records of actions taken.

Facebook is hereby ordered to disclose the above information to the government within 14 days of issuance of this warrant.

## II. Information to be seized by the government

All information described above in Section I that constitutes fruits, evidence and instrumentalities of violations of 18 U.S.C. § 922(g)(1) involving TYQUAN JACKSON since July 6, 2019, including, for each user ID identified on Attachment A, information pertaining to the following matters:

(a) Photographs, video or other media portraying or discussing firearms;

(b) Communications discussing firearms or potential motives for carrying a firearm;

(c) Records indicating the identity of the person(s) who created or used the user ID, including records that help reveal the whereabouts of such person(s).

This warrant authorizes a review of electronically stored information, communications, other records and information disclosed pursuant to this warrant in order to locate evidence, fruits, and instrumentalities described in this warrant. The review of this electronic data may be conducted by any government personnel assisting in the investigation, who may include, in addition to law enforcement officers and agents, attorneys for the government, attorney support staff, and technical experts. Pursuant to this warrant, the FBI may deliver a complete copy of the disclosed electronic data to the custody and control of attorneys for the government and their support staff for their independent review.